† STATE OF OHIO EX REL. LONG v. BERNARD BRINKMAN, ET AL.

1. ACT PROVIDING FOR SO IMPERFECT AS TO BE INVALID.

Section 3085, Rev. Stat., requiring the Board of County Commissioners of the county in which a majority of the men reside, to provide for each organization a suitable armory, the expense to be paid either by the county wherein all the members of any such organization reside, or by counties in proportion as they have resident members of any such organization, but not providing out of what fund to pay, or how or by whom the proportionate amount each county is to pay is to be determined, is so imperfect as to render it impossible to execute it, and therefore void.

2. STATE MUST MAINTAIN ARMORIES.

Furnishing an armory for the state militia, and the maintenance thereof, cannot be at county expense, and hence that said section is in conflict with and in violation of Article IX, section 5 and Article X, section 7, of the constitution of the state, and void.

On Appeal from the Court of Common Pleas of Putnam county.

SENEY, J.

The relator, David C. Long, is Captain of Company "I," 2nd Regiment of Infantry, Ohio National Guard, and as such Captain has given bond, and is responsible for the care and preservation of a large amount of arms, equipments, uniforms and other military property furnished by the state to said Company "I."

---

† This opinion was followed in Daniel v. Columbus, 4 Ohio Circ. Dec., 293. Also followed in State v. Kreighbaum, 6 Ohio Circ. Dec. 654

That Company "I" is a regularly, legally organized company of infantry under the laws of Ohio, and a part of the active militia of the state, and has been furnished by the state with arms, equipments, uniforms, blankets and other military property necessary for its use as such active militia.

That at the commencement of this action the total number of members of said company was fifty-three, consisting of three commissioned officers and fifty enlisted men. That thirty-seven of said members were at said time residents of said Putnam county, Ohio, and that the headquarters of said company are situated in Ottawa, in said county, and a majority of said members are now residents of said Putnam county.

That the armory, rented for said company by the board of county commissioners, was inspected by an officer appointed for that purpose by the commander in chief of said militia, and was by such officer disapproved and rejected, for the reason that it was totally unfit for an armory for said Company "I."

That the respondents, the board of county commissioners of Putnam county, Ohio, were duly notified of such inspection by such officer, and of his disapproval and rejection of the same as unfit for the purposes of an armory, and requested and demand was made of said board to furnish a suitable armory, but that the said respondents then and there neglected and refused, and do still neglect and refuse to furnish any suitable armory, or any room other than the one so condemned by the inspecting officer.

That a suitable room could, at the time of filing the application, and still can be procured for said purpose, of which fact the respondents, the board of county commissioners, had full knowledge.

Upon this state of affairs, can the board of county commissioners of Putnam county, Ohio, be compelled by a peremptory writ of mandamus, to furnish Company "I" a suitable room or armory, is the question presented to the court by an appeal from the court of common pleas of this county.

It is urged and claimed by the relator that this question must be answered in the affirmative, by virtue of sec. 3085 of the Rev. Stat. of the state, as amended and found in vol. 89 O. L., 413, which section reads:

"Section 3085. The Board of County Commissioners of the county in which all or a majority of the officers and enlisted men of any regiment, battalion, company, troop or battery reside, shall provide for each organization a suitable armory for the purposes of drill and for the safe keeping of the arms, equipments, uniforms and other military property furnished by the state, subject to the inspection and approval of an officer detailed for that purpose by the commander-in-chief, and the expense of armories, including the necessary care of said armories, fuel and light, shall be paid either by the county wherein all the members of any such organization reside, or by counties in proportion as they have resident members of any such organization."

As the facts presented in the case at bar show that a majority of the officers and enlisted men of Company "I" reside in Putnam county; then under said sec. 3085, Putnam county is the county that is required to furnish an armory to Company "I." The furnishing of this armory involves necessarily an expense—an expenditure of public money—be the same a large or a small amount. As to how much of this amount Putnam county is to pay, or from what source it is to derive the money to pay with, the section is silent. True the section provides that (as in the case at bar), where the members of the company reside in different counties, said counties should pay the expenses in proportion to the resident members. But what tribunal, board or officer shall determine the resident members of the respective counties so as to be able to determine the proportionate amount of the expense each county must pay, the section does not say.

Company "I" has fifty-three members, thirty-seven of whom reside in Putnam county. So that of the expenses of an armory and its maintenance, Putnam county must pay 37-53 of the expense. Nothwithstanding Putnam county is only required to pay 37-53 of the expense, yet it is also required to furnish an armory and maintain it, which carries with it the payment of the entire expense. After Putnam county has obligated itself for an armory and its maintenance, which under all rules of law governing contracts makes it liable for the entire amount, how and in what manner is Putnam county to receive the other 16-53 of the expense? The section is silent.

Again:

Putnam county must pay only 37-53 of the expense. From what source will it receive the money, or from what fund will it be paid? The section is silent.

If the views thus expressed are correct, it is evident that the object and purpose of section 3085 it is impossible to execute, on account of these imperfections, and it is therefore void.

As held by the supreme court in the case of State v. Com'rs, 35 O. S., 458, 466, wherein Judge· Okey says:

"Because the act is vague and indefinite in its terms, cases may be found in which statutes have been held void on such grounds, but as decided in Cochran v. Loring, 17 O., 409, though the law is imperfect in its details, it is not void unless it is so imperfect as to render it impossible to execute."

It is further urged and claimed by relator that although sec. 3085 does not provide from what source or fund the expense shall be paid, it does authorize the commissioners to create the liability, and by so doing they are governed by section 2822 and 2823 of the Rev. Stat.

Section 2822 provides that:

"The county commissioners shall at their March or June session, annually, determine on the amount to be raised for ordinary county purposes, for public buildings, for the support of the poor, and for the interest and principal of the public debt, and for road and bridge purposes, and they shall set forth in the record of their proceedings, specifically, the amount to be raised for each of said purposes."

Section 2823 provides the limit of the levy for county purposes other than for roads,· bridges, county buildings, sites therefor, and the purchase of lands for infirmary purposes, and further limits the levy for the purpose of building county buildings, purchasing sites therefor, etc., etc.

The general assembly derive the power to enact secs. 2822 and 2823 from the constitution of the state, as expressed in Art. X, sec. 7, which reads:

"The commissioners of counties, the trustees of townships and similar boards, shall have such powers of local taxation for police purposes as may be prescribed by law."

From this article and section of the constitution it will be noticed that the commissioners of a county are limited in their powers of taxation to "local taxation for police purposes."

Acting under this limitation, the general assembly enacted secs. 2822 and 2823 Rev. Stat., which, so far as the question before us is concerned, provide for a levy and collection of taxes for ordinary county purposes, for county buildings, and purchasing sites therefor.

The question now presents itself: Is the furnishing of an armory and the maintenance thereof for the state militia, or a company thereof, an expense created either for "ordinary county purposes," or for "county buildings?"

It cannot be controverted but that the militia of the state and every part and branch thereof, is a state institution, subjected to the powers of the state, controlled· by the state, and with which the respective counties of the state, even to the remotest degree, have nothing whatever to do.

The constitution of the state then provides:

Article III, sec. 10: "That the governor of the state, shall be commander-in-chief of the military and naval forces of the state, etc."

Article IX, sec. 3, provides: "The governor shall appoint the adjutant general, quartermaster general, and such other staff officers as may be provided for by law, etc."

Article IX, sec. 5, provides: "The general assembly shall provide by law for the protection and safe keeping of the public arms."

Acting under these ·various provisions of the constitution, the general assembly have from time to time provided for a state militia and its maintenance

even to the minutest detail, the expense thereof to be borne by the state at large. Could it do otherwise under the constitution? We think not.

How can it be said that the furnishing of an armory and its maintenance, for the sole purpose of the state, viz: to protect the arms of the state, to furnish an abiding place for the militia of the state, which are subjected to no authority or control other than state authority, is an expense created either for "ordinary county purposes or for county buildings?"

The purpose of an armory for drill and the care of state arms, is nothing more or less than one of the essential elements entering into and forming a part of a complete and perfect state militia, in order that the militia may the more be able to do the service of the state (not the county), when the commander-in-chief shall so require.

This even is recognized by the general assembly in enacting sec. 3085, for it provides that the armory to be furnished by the board of county commissioners shall be subjected to the inspection and approval of an officer detailed for such purpose by the commander-in-chief, thus saying in effect—if the expense is to be borne by the county or building fund: that while the commissioners are limited by the constitution and the laws in their power to make a levy and create a county or building fund, that the county and building fund shall be controlled by an officer of the state, to the detriment of the police interests of the county, and at a sacrifice of the improvement of the county.

Under sec. 3085, if the officer detailed by the governor should deem it necessary that an armory costing $10,000.00 should be erected for the accommodation of Company "I," and the members of Company "I" were all residents of Putnam county, the tax-payers of Putnam county would have to pay the bill, and would have no voice or control in the management of the armory. They would then be taxed for a state institution, while the remainder of the state would escape taxation, and the only reason why Putnam county would have to bear the burden, would be because within her borders were found among her residents self-sacrificing men who were willing to devote a part of their time each year in acquiring that knowledge and proficiency which would enable them to better serve their state. If such unconstitutional legislation is to prevail, how long will it be before the state militia will be without a company? As well might the general assembly require the county commissioners of Putnam county to furnish Company "I" with the arms and clothing necessary for its use. As well might the general assembly require the commissioners of Franklin county to erect and maintain an arsenal in the city of Columbus at the expense of the tax payers of Franklin county alone.

As we have seen, by Art. IX, sec. 5, of the constitution of the state, "the general assembly shall provide by law for the protection and safe keeping of the public arms." This power cannot be delegated or transferred by the general assembly to the Board of County Commissioners, for the power there conferred involves taxation, and under Art. X, sec. 7, of the constitution of the state, the powers of the board of county commissioners are limited in taxation "to local taxation for police purposes."

As we have already said, the militia is a state institution, controlled by the state. A place to drill and to protect and care for the state arms, is but a means to accomplish an end, viz., to perfect a state militia organization. The expense attached to this means is necessarily a state expense (not a county expense), and must be borne by the taxpayers at large throughout the state.

To meet and pay this claim of expense the general assembly is authorized by Art. XII, sec. 4, of the constitution of the state, which reads:

"The general assembly shall provide for raising revenue sufficient to defray the expense of the state for each year, and also a sufficient sum to pay the interest on the state debt."

Personally each member of the court would desire that Captain Long and his company might be furnished with a suitable armory, but as judges of the court we have an official duty to perform, by declaring the law as we understand it, and in the performance of that duty, we pronounce sec. 3085, Rev. Stat. of the state in conflict with, and in violation of Art. IX, sec. 5, and Art. X, sec. 7 of the constitution of the state.

Entertaining these views, the peremptory writ of mandamus will be refused, and the petition dismissed, at the costs of the relator.

Moore and Day, JJ., concur.

Long & Long, for relator.

Bailey & Bailey, for respondents.